UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BERNARD ISREAL LADSON, ) | CIVIL ACTION 4:11-2565-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 13, 2007, alleging an onset of disability of August 1, 1993. His applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held on January 29, 2010, before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff amended his alleged onset date to May 13, 2003 (Tr. 40). Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge

(ALJ) issued an unfavorable decision on February 12, 2010, finding Plaintiff was not disabled within the meaning of the Act. (Tr.22-31). After the Appeals Council denied Plaintiff's request for review (Tr. 1-4), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). Plaintiff filed the instant action on September 23, 2011.

## II. FACTUAL BACKGROUND

The Plaintiff was born on March 2, 1958, and was forty-eight years old on the date last insured. Plaintiff has a high school education and past work experience as a stock room clerk. Plaintiff served in the Amy as a field artillery gunner from 1977 until 1982, received an honorable discharge and was then in the reserves from 1978 to 1993. (Tr. 39-43). Plaintiff alleged disability due to headaches and post traumatic stress disorder (PTSD).

Plaintiff was in the Army but received an honorable discharge in 1982. Plaintiff testified that he fell about forty feed out of a helicopter in a tree and suffered several fractures in his face which resulted in migraine headaches among other problems. Plaintiff also testified that he was involved in a friendly fire incident where three British soldiers were killed. Plaintiff testified he was in the field as a gunner and that "during the mix of all the yelling and stuff, I shot off the wrong quadrant" and three British soldiers were killed. (Tr. 42). Plaintiff testified that he lost his job as a maintenance man in 2003 due to severe headaches, paranoia about people, getting angry with people, and wanting to fight. Plaintiff testified that he has a headache about every day because his eyes try to line up and he has double vision and he has three to four migraine headaches a month and is "out" two to three days until it returns to a "regular headache." (Tr. 45-46). Plaintiff testified that

his medication for depression and stress cause such side effects as making him feel tired, sleepy[1], dry mouth, and in a "dizzy space" resulting him not being able to function. (Tr. 49).

### III.  DISABILITY ANALYSIS

The Plaintiff argues as follows, quoted verbatim:

1.  Is the Commissioner's decision that Plaintiff is not disabled supported by substantial evidence and correct under controlling law?

    A.  The ALJ erred in failing to consider the medical opinion evidence of Plaintiff's treating psychiatrist that he was disabled during the pertinent period and in failing to assign proper weight to the opinions of other treating and examining medical sources.

    B.  The ALJ erred in failing to properly evaluate Plaintiff's subjective symptoms.

    C.  The ALJ properly found that Plaintiff's headaches were among his "severe" impairments during the pertinent period but failed to include either in his VE hypothetical or his residual functional capacity finding any limitations resulting from that impairment.

    D.  The ALJ's hypothetical to the vocational expert and his residual functional capacity assessment failed to include the Plaintiff's visual impairments, including those noted by the State agency medical consultants.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and urges that

---

[1] Plaintiff testified that he no longer attempts to cook because he fell asleep while cooking and burned the house down. (Tr. 51).

substantial evidence supports the determination that Plaintiff was not disabled. In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings in his decision of February 12, 2010:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant did not engage in substantial gainful activity during the relevant period from his amended alleged onset date of May 13, 2003, through his date last insured of December 31, 2006 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: depression, migraine headaches, and vision loss (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. However, the claimant could not climb, crawl, or be exposed to industrial hazards, and he could not perform tasks requiring fine visual acuity. Additionally, the claimant could work in only a low stress setting requiring no more than occasional decision-making or changes in the setting; he could have no exposure to the general public; and he could have no more than occasional interaction with coworkers and supervisors.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 28, 1955, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant is now 53 years of age and changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

> 9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. During the relevant period, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, from November 22, 2005, the date of the most recent decision that the claimant was not disabled, through December 31, 2008, the date the claimant was last insured for benefits (20 CFR 404.1520(g)).

(Tr. 9-21).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be

upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.

SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

## IV. ANALYSIS

Plaintiff argues the ALJ erred in failing to consider the medical opinion of his treating psychiatrist at the VA, Dr. Michael Huber, who treated him from 2002 to 2004. Dr. Huber submitted a statement on July 15, 2004, a year after Plaintiff ceased all employment. Plaintiff argues that the name of Dr. Huber does not appear in the ALJ's decision which indicates the ALJ did not consider his statement. Plaintiff also argues that the ALJ discounts the opinions of both consultative psychologists, Drs. Fishburne and Waid, that Plaintiff was disabled. Further, Plaintiff asserts that the ALJ ". . . improperly rejected the finding by the VA that Plaintiff had been entitled to a total disability rating retroactive to July 20, 2004, (Tr. 239-243) on the grounds that the 'Social Security Administrations' guidelines, regulations, and definitions for disability differ from those followed by the VA.'" Additionally, Plaintiff contends that the ALJ did not cite evidence in the record to support his rejection of the VA's finding which is supported by the mental status abnormalities and GAF assessments of all of its treating mental health professionals.

The Commissioner asserts that there was substantial medical evidence to support the decision of the ALJ and that the ALJ properly evaluated the medical opinion evidence. Defendant argues that although the ALJ considered all of the opinion evidence, he did not specifically discuss Dr. Huber's 2004 opinion that Plaintiff had decreased concentration and poor attention. Defendant asserts that

Dr. Huber did not quantify his statement that Plaintiff had decreased concentration and poor attention, his statement was not supported by any objective evidence, and his statement did not indicate that Plaintiff could not perform simple tasks. (Defendant's brief, p. 6). Defendant asserts that the ALJ gave specific legitimate reasons why he did not find the opinion of Dr. Fishburne that Plaintiff was mildly retarded persuasive and, as to Dr. Waid, Defendant asserts that the ALJ considered the opinion but gave it little weight because it was rendered more than two years afer Plaintiff's date last insured. Lastly, Defendant argues that the ALJ did not err in his rejection of the VA disability rating because the definition of VA disability is not the same as that of the Social Security Administration and is not binding on the Commissioner.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). The legal standard which applies is contained in 20 C.F.R. § 404.1527. Under § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the[ record." See 20 C.F.R.

§404.1527(d)(2).[2] Furthermore, even if the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Under § 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 30 C.F.R. 404.1527(d)(2) (i-ii) and (d)(3)-(5). Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Id.

The ALJ found the following with regard to the medical evidence, quoted verbatim, in part:

> In terms of the claimant's migraines, the claimant has sought treatment for this condition on only a few occasions through his date last insured. Specifically, he reported migraines in January and

---

[2] This standard, of course, is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

9

November 2006. (Exhibit 3F). There are no treatment notes in the record from 2004 or 2005. The relatively infrequent treatment of the claimant's migraines suggests that they are not as limiting as he has alleged.

In terms of the claimant's depression, there is no indication that the claimant has required psychiatric hospitalization since his amended alleged onset date. Further, during the period between his amended alleged onset date of May 13, 2003, and his date last insured of December 31, 2006, the claimant has not sought significant treatment for his depressive symptoms. While the claimant was assigned a Global Assessment Functioning (GAF) score of 45 in September, at a follow-up examination in November 2006, the claimant reported decreased depressive symptoms as a result of his increased complaince with prescribed anti-depressant medications. A mental status examination from November 2006 revealed that while he continued to exhibit an anxious, fearful, and tearful mood, he had: normal motor skills, without psychomotor agitation/retardation: normal speech: logical and goal-directed thought processes: intact and proper orientation to time, person, place, and situation; good judgment and insight; and fair memory and concentration. The claimant also denied delusions, auditory and visual hallucinations, and suicidal and homicidal ideations at that time. (Exhibit 3F). In July 2007, consultative examiner Francis J. Fishburne, Ph.D. noted that although he appeared depressed and had some difficulties with short-term memory, the claimant otherwise exhibited: no abnormal motor activities, full range of affect, normal speech, grossly normal attention and concentration with a ability to count by 3s without difficulty, good insight, and clear and goal-directed thought processes. Dr. Fishburne further noted the claimant denied delusions, hallucinations, paranoid thoughts, and suicidal or homicidal ideations. However, Dr. Fishburne documented that the claimant's ability to perform simple mental arithmetic and verbal tasks fell in the mild mental retarded range and that the claimant had some impulse control problems associated with his reported use of narcotics and driving with a suspended license. Dr. Fishburne assessed the claimant with major depressive disorder and mild mental retardation and assigned the claimant a Global Assessment Functioning (GAF) score of 45. (Exhibit 4F). However, Dr. Fishburne did not cite any specific achievement scores or findings to support a diagnosis of mild mental retardation but made only a general statement that the clamant's arithmetic and verbal scores fell in the mild mental retarded range. There is no other evidence of record to support a diagnosis of mild mental retardation. Notably, a neuropsychological evaluation

10

> conducted in February 2009 revealed the claimant had a Verbal IQ of 84, which placed him in only the "below average" range, and not the borderline or deficient ranges. (Exhibit 16F). Further, the claimant's mental status examination was essentially normal and does not support the relatively low GAF score that Dr. Fishburne assigned to him.
>
> In February 2009, upon referral of the claimant's representative, I. Randolph Waid, Ph.D. conducted a Neuropsychological Evaluation of the claimant. Dr. Waid assessed the claimant with major depressive disorder and post traumatic stress disorder and assigned him a GAF of 42. However, this assessment was conducted more than two years after the claimant's date last insured of December 31, 2006, and is therefore, at best, only marginally relevant to the claimant's claim for disability.

(Tr. 28).

The ALJ did not discuss the opinion of Dr. Huber, treating psychiatrist at the V.A. or discuss the weight he assigned to such opinion. In a statement dated July 15, 2004, Dr. Huber opined the following:

> . . . Mister Ladson has been followed in our clinic since January 2002. This patient has been diagnosed with PTSD following a friendly fire incident and he is also being treated for a major depressive disorder. Mister Ladson is currently service connected for a head injury and he also experiences migraine headaches. His complaints include low mood and a history of suicidal ideation. Mister Ladson has problems falling asleep and staying asleep and he experiences nightmares related to the friendly fire incident. This patient has decreased concentration and poor attention and he was recently discharged from Occupational Therapy because he could not function and stay on task. Mister Ladson also failed Vocational Rehabilitation because he was deemed unemployable. This patient's psychiatric symptoms affect his ability to function and his depression is exacerbated by pain from chronic headaches. It is reasonable to believe his psychiatric problems are likely to be chronic and progressive in nature.

(Tr. 224).

As stated, the ALJ did not mention Dr. Huber or his opinion. Dr. Huber was Plaintiff's treating psychiatrist at the VA since January 2002. Therefore, the undersigned does not know if the

11

ALJ even considered Dr. Huber's records and opinion much less what weight he accorded the opinions.

As to Dr. Fishburne's examination of July 10, 2007, the ALJ discounted his opinion that Plaintiff was mildly retarded finding that there was no testing to support the opinion. While the ALJ noted that Dr. Fishburne also found that Plaintiff had a GAF score of 45 and, if benefits were awarded, he "would require the assistance of a responsible adult to manage benefits because of his cognitive and memory problems"(tr. 388-389), he did not discuss why he discounted the GAF score when it was supported by other evidence of record. The ALJ only discussed why he rejected Dr. Fishburne's opinion that Plaintiff had mild mental retardation. Based on his report, Dr. Fishburne did observe Plaintiff and did administer attention/concentration and short-term memory testing. (Tr. 385-389). Regardless, Dr. Fishburne's finding that Plaintiff had a GAF of 45 supported other evidence of record that was also discounted or ignored by the ALJ.

Dr. Waid conducted a Neuropsychological Evaluation of the claimant in February 2009 assessing him with major depressive disorder and post traumatic stress disorder and assigned him a GAF of 42. However, the ALJ discounted the assessment because it was conducted more than two years after the Plaintiff's date last insured.[3] Additionally, the ALJ did not give consideration of the VA's finding that Plaintiff was 100% disabled stating that the VA disability rating system and the Social Security rating system differ.

Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's date

---

[3] Ironically, the ALJ relied on this same neuropsychological report conducted in February of 2009 to discount Dr. Fishburne's GAF finding.

12

last insured ("DLI"). Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir.1987). In Bird v. Commissioner of Social Sec. Admin., 699 F.3d 337, 341 (4th Cir. 2012), the Fourth Circuit held that:

> In Moore[4], we recognized that evidence created after a claimant's DLI, which permits an inference of linkage between the claimant's post–DLI state of health and her pre–DLI condition, could be the "most cogent proof" of a claimant's pre–DLI disability. Id. Accordingly, under our decisions in Moore and Johnson[5], retrospective consideration of evidence is appropriate when "the record is not so persuasive as to rule out any linkage" of the final condition of the claimant with his earlier symptoms. Id.

Although Plaintiff must establish the presence of a disability prior to the date last insured, medical evidence produced after the date last insured is admissible if said evidence "permits an inference of linkage with the claimant's pre-date last insured condition." Bird, 699 F.3d at 341. Therefore, based on the Fourth Circuit's decision in Bird, the Defendant is to consider the medical evidence post the date last insured as long as "that evidence permits an inference of linkage with the claimant's pre-DLI condition" and the failure to do so constitutes "an error of law." Id.

In this case, the ALJ's failure to consider the report by Dr. Waid because it was after the DLI was error and the case should be remanded to allow the retrospective consideration of these medical records and opinion. In Dr. Waid's report, he stated that based on the results of the testing performed, Plaintiff demonstrated "mild psychomotor retardation." (Tr. 516). Dr. Waid found that "[i]n the context of being disruptively depressed with an easy confusion and attentional difficulties, Mr. Ladson was assessed as proving good effort to meet the demands of testing." (Tr. 517). Dr. Waid assessed Plaintiff with major depressive disorder; post-traumatic stress disorder, chronic; social phobia; cognitive disorder "secondary to the residual of a traumatic brain injury as well as the

---

[4] Moore v. Finch, 418 F.2d 1224 (4th Cir. 1969).

[5] Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005).

interfering effects of chronic pain/somatic symptoms; psychological disruption; sleep disturbance/fatigue; and need for use of an extensive medication regimen." (Tr. 521). Dr. Waid assigned Plaintiff a GAF of 42 and found that he needed "continuing psychiatric, medical, and cardiological care; disability" (Tr. 521). Dr. Waid's report supported Dr. Fishburne's conclusion of mild mental retardation and supported the GAF assigned by Dr. Fishburne and other medical sources. The post date last insured medical evidence clearly "permits an inference of linkage." Further, Plaintiff's testimony corroborated the reports and compels a conclusion that a full retrospective assessment of Dr. Waid's report is necessary and may provide the "most cogent proof" relating to Plaintiff's claim of disability.

As the Fourth Circuit recently held in Bird, the SSA must give substantial weight to the VA's disability rating; however, "because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the records before the ALJ clearly demonstrates that such a deviation is appropriate." Bird, 699 F.3d at 343. In this case, the ALJ stated that he considered the VA disability rating but found that it only offered limited insight regarding Plaintiff's medical conditions and pain without giving a detailed explanation. The ALJ erred in this respect. The ALJ failed to afford significant weight to the VA rating decision or explain why the giving of less weight would be appropriate.

The ALJ failed to give appropriate retrospective consideration to the medical evidence from Dr. Waid as required by the Court in Bird, failed to afford significant weight to the VA rating decision or explain why giving it less weight would be appropriate, and failed to acknowledge Dr. Huber's records or reports. As a result of the ALJ's failure to explain his assessment of Plaintiff's

treating psychiatrist's opinions, and failure to conduct a proper analysis of the opinions of Dr. Fishburne, Dr. Waid, and the VA disability rating, the court is unable to ascertain whether the Commissioner's decision is supported by substantial evidence. In addition, the Court cannot adequately address Plaintiff's remaining arguments as to the ALJ's decision with regard to Plaintiff's credibility and the hypothetical to the vocational expert.

Accordingly, this action is remanded to the Commissioner for the ALJ to address the opinions of Plaintiff's treating physicians and explain the weight accorded thereto and conduct a proper analysis under SSR §404.1527 as to their opinions, including but not limited to Dr. Huber, Dr. Fishburne, and Dr. Waid. Further, the Commissioner should reevaluate the Plaintiff's credibility, RFC, and should also consider obtaining evidence from a vocational expert as to whether jobs exist which Plaintiff can perform, given his age, education, work experience and limitations as established by the evidence.

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on a barren record devoid of the appropriate administrative analysis. Accordingly,

For the reasons set forth above, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

February 22, 2013

Florence, South Carolina